1

2

3

4

5

6

7

8

9          IN THE UNITED STATES DISTRICT COURT

10          FOR THE NORTHERN DISTRICT OF CALIFORNIA

11

ALFONSO D ROCHELL,                    No C 04-02684 VRW
12
          Plaintiff,                       ORDER
13
          v
14
JO ANNE B BARNHART, Commissioner
15 of Social Security,

16          Defendant.
_____/
17

18

19

20

21          Plaintiff Alfonso Rochell appeals from the decision of

22 the Social Security Administration ("SSA") denying him social

23 security disability benefits and supplemental security income

24 ("SSI").  The court now considers cross motions for summary

25 judgment.  Pl Mot (Doc #18); Def Mot (Doc #19); Pl Rep Mot (Doc

26 #24).  For the reasons stated herein, the court GRANTS plaintiff's

27 motion and DENIES defendant's motion.

28 //

**United States District Court**
For the Northern District of California

I

A

Plaintiff was born on October 19, 1976.  Administrative Record ("AR") (Doc #15) at 185.  During his childhood, plaintiff developed end stage renal disease that required dialysis for eight to nine months.  In 1991, at the age of fifteen, he received a kidney transplant.  AR at 289, 329.

On July 14, 1993, the SSA designated plaintiff "disabled" within the meaning of the Social Security Act with an established onset date of October 1, 1986.  AR at 24.  The SSA's initial decision used medical evidence to show that plaintiff suffered from end stage renal failure.  AR at 24.  Plaintiff was diagnosed with nephritic syndrome (an inflammation of the kidneys) and chronic renal failure secondary to glomerulosclerosis (scarring and degeneration of structures within the filtering units of the kidneys).  Id.  Also, plaintiff's creatinine levels, which are generally indicative of diminished kidney function, were measured "as high as 3.3".  Id.  The decision also noted that plaintiff had a shunt implanted for dialysis treatment and was prescribed Prednisone to relieve his kidney ailments.  Id.

Plaintiff testified to orthopedic problems with his left knee, stating that in 1991 he underwent arthroscopic surgery on his left knee because of a deteriorating bone, AR at 53, 56, and that, soon after recovering from surgery, he fractured his kneecap while playing sports and required three additional surgeries.  AR at 53-54.  The record contains no medical records concerning this medical history.

//

United States District Court

For the Northern District of California

2

**United States District Court**
For the Northern District of California

Immediately following high school in 1994, plaintiff enrolled at the City College of San Francisco.  AR at 40, 64. Although the college tried to place plaintiff in "ESL special ed classes," he enrolled in regular classes such as English, math, criminology and physical education.  AR at 64.  Plaintiff attended college for less than one year because he only made "Ds, Fs, and * * * a B in gym."  Id.

Since 1993, plaintiff has engaged in varied employment including security guard, customer service officer and clerical aide.  AR at 98-99, 204-06.  From 1996 to 1997, plaintiff engaged in his longest period of employment (approximately eighteen months) working for a private security company as a patrolman and traffic officer.  AR at 40, 46, 205.  He again worked as a security guard from 2000 to 2001 for the San Francisco Baseball Associates.  AR at 38-39, 210.  Plaintiff has also worked as a clerical aide and sales representative.  From 1993 to 1994, while still in school, he answered phones and filed records for the Japanese Community Youth Council.  AR at 39, 204.  As a sales representative in retail stores, plaintiff worked as a cashier and stocked shelves.  AR at 40-41, 43, 205.

Plaintiff has not been employed since approximately May 2001.  AR at 47.  In 2001, he earned approximately $10,627.00, working for two companies: Virologic and McCoy Patrol Service.  AR at 46-47, 210.  While at Virologic, plaintiff worked in a warehouse lifting supplies weighing from ten to twenty pounds and, occasionally, some supplies that he could not handle that weighed fifty to one hundred pounds.  AR at 47.  Since then, plaintiff has not worked.

United States District Court

For the Northern District of California

According to plaintiff, many of his jobs lasted only a couple of months.  During his first administrative law judge ("ALJ") hearing on June 2, 2002, plaintiff explained "[s]ome of them, I was fired from, because of medical reasons.  Some of them I quit."  AR at 41.  He clarified that employers "would get mad * * * because I didn't show up to work, because I wasn't feeling right * * *.  My knees were giving me problems.  My back was giving me problems.  And my hands would cramp up to where I couldn't work for a long period of time."  AR at 42.  At a second ALJ hearing on September 25, 2003, plaintiff asserted that he was physically unable to engage in any previous types of employment.  AR at 76.

Since 1995, plaintiff has been under the care of Donald Potter, MD, a pediatric kidney specialist, who practices at the Children's Renal Center at the University of California San Francisco Medical Center.  AR at 50-51, 329.  At the first ALJ hearing, plaintiff testified that he sees Dr Potter on a regular basis and that Dr Potter is his "only medical care."  AR at 51.  Although Dr Potter has treated plaintiff since 1995, the record contains none of plaintiff's medical records prior to 2000.

On September 18, 2000, Dr Potter treated plaintiff for migraines and lower thoracic back pain.  AR at 262.  Plaintiff also reported sharp, acute back pains of twenty minutes' duration.  Id. Dr Potter determined that there was "[m]inimal anterior compression of the T11-T12 vertebral bodies, consistent with mild compression fractures of uncertain duration."  AR at 259.

On July 14, 2000, plaintiff visited Dr Potter complaining of blood in his urine ("gross hematuria"), AR at 277, for which he was referred to Laurence Baskin, MD, the chief pediatric urologist

4

United States District Court

For the Northern District of California

at University of California San Francisco Medical Center.  AR at 277, 267.  On August 2, 2000, Dr Baskin conducted a cystoscopy on plaintiff that proved normal.  AR at 263, 266.  Dr Baskin opined that there was no "obvious" cause for plaintiff's hematuria.  Id.

On May 16, 2001, Farah Rana, MD, an internal medicine physician, conducted a consultative internal medical evaluation of plaintiff on behalf of the SSA.  AR at 289.  Plaintiff stated he was taking immunosuppressants and claimed his renal functions were fine but complained of migraines, low back pain and pain in both his knees.  Id.  Dr Rana diagnosed plaintiff with a history of hypertension, end stage renal disease, status post kidney transplant, history of migraine headaches, arthritis in the knees and chronic low back pain that was most likely secondary to degenerative joint disease.  AR at 291.  Dr Rana also noted that plaintiff had taken Prednisone since 1990.  Id.  Dr Rana opined that plaintiff could: (1) stand and walk six hours with breaks in an eight hour day; (2) carry twenty pounds consistently and forty pounds occasionally; (3) make any motion without limitations; and (4) handle, manipulate and feel things without any problem.  Id.

On July 6, 2001, Janine Marinos, PhD, a licensed psychologist, completed a consultative psychological evaluation of plaintiff on behalf of the SSA.  AR at 310.  Based on tests to evaluate plaintiff's cognitive functioning and a mental status examination, Dr Marinos diagnosed plaintiff with a "Depressive Disorder NOS" and "Borderline Intelligence."  AR at 313.  Dr Marinos stated that plaintiff appeared to have "significant depression related to his chronic medical problems and associated limitations," id, and that his depression would "likely limit his

United States District Court

For the Northern District of California

ability to tolerate the day-to-day stresses of regular, full-time employment." Id.  She opined that plaintiff had an "adequate ability to understand, remember, and carry out simple instructions, but may have some difficulty carrying out novel or complex tasks with adequate pace or persistence."  Id.

In July 2002, plaintiff experienced an acute transplant rejection requiring two hospitalizations and treatment with high doses of immunosuppressive drugs.  AR at 329.  Plaintiff's creatinine level soared to 4.2 and then decreased to 1.9 with treatment.  Id.  During treatment, plaintiff suffered from episodes of nausea and diarrhea, which resolved after adjustment of the dosage.  Id.  On August 14, 2002, the SSA received a note written by Dr Potter stating plaintiff had "been hospitalized twice in the last three weeks for severe kidney transplant rejection,"  AR at 328, that he could not currently work and "his ability to work full time in the future is problematic."  AR at 328.

On June 25, 2003, Dr Potter provided the SSA with an updated assessment of plaintiff's health.  Dr Potter diagnosed plaintiff with chronic rejection of kidney transplant, chronic renal insufficiency, hypertension, anemia, gout and ankle edema. AR at 24, 330-31.  Dr Potter also noted plaintiff's medication routine as follows:

```
1.  * * * Lasix 40 mg daily * * *.
2.  Prednisone 7.5 mg daily,
3.  CellCept 750 mg b.i.d.,
4.  Tacrolimus 5 mg in the morning, 6 mg at night,
5.  Amlodipine 10 mg daily,
6.  Benazepril 10 mg daily,
7.  Atenolol 25 mg daily,
8.  Ferrous sulfate 325 mg daily,
9.  Protonix 40 mg daily,
10. Sodium bicarbonate 1.2 g twice a day,
11. Calcitriol 0.25 mg three times a week,
```

United States District Court

For the Northern District of California

1          12. Erythropoietin 6000 units twice a week, and
           13. calcium carbonate 1.25 g daily.
2    AR at 330.

3          In addition, Dr Potter stated that plaintiff's medical
4    history included:  chronic renal insufficiency secondary to chronic
5    transplant rejection and creatinine levels "usually" ranging from
6    1.9 to 2.5; two episodes of gout; severe anemia requiring treatment
7    with erythropoietin injections; "fairly severe hypertension"; a
8    history of requiring anti-depressants; and various musculoskeletal
9    deficiencies, including unexplained tingling in his fingers, pain
10   in the base of his hand lasting for up to two days, swelling in his
11   ankles for a two month period and a chronically damaged left knee,
12   for which he occasionally wore a knee brace.  AR at 329-30.
13   Finally, Dr Potter opined that it is "questionable whether
14   [plaintiff] is able to hold down a job."  AR at 331.

15

16                               B

17         On July 14, 1993, the SSA designated plaintiff "disabled"
18   with an established onset date of October 1, 1986.  AR at 23.  On
19   July 23, 2001, however, a Notice of Disability Cessation ended
20   plaintiff's benefits based on medical evidence demonstrating
21   satisfactory kidney function and improved overall health.  AR at
22   118.  Plaintiff filed for reconsideration.  A Disability Hearing
23   Officer heard the case and upheld the SSA's decision.  AR at 122,
24   130.  Plaintiff then requested a hearing before an ALJ.  AR at 158.
25         On June 6, 2002, the ALJ heard testimony from plaintiff,
26   who appeared without representation, two medical experts — Dr Alan
27   Coleman, an internal medicine physician, and Dr Thomas Singer, a
28   psychiatrist — and a vocational expert ("VE"), Mr Richard Hincks.

                                   7

United States District Court

For the Northern District of California

AR at 97, 161, 165, 168.  On July 8, 2002, the ALJ found that plaintiff had neither a continuing disability nor a new one.  AR at 97-102.

Plaintiff appealed to the SSA Appeals Council ("AC").  AR at 171.  On October 9, 2002, the AC vacated the ALJ's decision and remanded the case to obtain further evidence from plaintiff's treating physician, Dr Potter, regarding the kidney transplant rejection episode, which had occurred after the first ALJ hearing.  AR at 172.  The AC also directed the ALJ to:  (1) give greater consideration to examining and non-examining source opinions; (2) further consider plaintiff's maximum residual functional capacity; (3) further evaluate plaintiff's mental impairments; and (4) determine whether plaintiff could engage in substantial gainful activity if there had been medical improvement under the evaluation steps cited in 20 CFR 416.994(b)(5).  AR at 172-73.

At the second ALJ hearing on September 25, 2003, the ALJ again heard testimony from plaintiff, who again was unrepresented, from the same two medical experts, Drs Coleman and Singer, and from new VE, Ms Nancy Rynd.  AR at 69.  Plaintiff testified that the pain was then more severe than at the first hearing, AR at 74, and that he continued to have back pains, neck pains, finger cramping and gout in his toe.  AR at 70-71.  Specifically, plaintiff testified that both knees hurt, which made it difficult to walk and even harder to walk up stairs or hills, and that he suffered from shortness of breath.  AR at 70, 75.  He also stated that his hands and fingers cramp for twenty- to forty-minute episodes.  AR at 70.  Plaintiff stated that his doctors "don't really do nothing," AR at 72, for his pain and that the Tylenol he took did not really help.

United States District Court

For the Northern District of California

AR at 74.  But he also testified that he took nine other medications daily for other medical ailments.  AR at 71.  He also admitted that his doctor had referred him to a pain clinic in August 2002 but that he never made an appointment.  AR at 72-73.

After hearing plaintiff's testimony and reviewing the medical evidence, Dr Coleman opined that plaintiff's kidney functioned quite adequately, despite losing some of its function. AR at 79.  He stated that plaintiff remains on several medications to prevent rejection and, although his kidney is currently stable, he may suffer progressive loss of kidney functions in the future. Id.  Dr Coleman observed that plaintiff's complaints were not about kidney failure but mostly musculoskeletal issues.  Id.  Moreover, he expressed uncertainty as to why plaintiff complained of such severe musculoskeletal problems because plaintiff's medical record was "quite silent" and did not support such a finding.  AR at 79-80.  Further, Dr Coleman stated that plaintiff's ailments did not meet or equal any listing and he "should be able to do sedentary work, certainly."  AR at 80.  Of note, Dr Coleman stated he changed his evaluation from medium work in the first ALJ hearing to an evaluation of sedentary work because he was "swayed by [plaintiff's] testimony" despite "no objective evidence to support" it.  AR at 81.

Dr Singer testified to plaintiff's mental impairments after reviewing the 2001 consultative psychological evaluation by Dr Marinos (discussed in Part I.A, supra).  He opined that, despite reference to a learning disability and some cognitive limitations, plaintiff's WAIS-III test scores (AR at 312) fell within a high borderline range and did not meet a listing for disability.  AR at

United States District Court

For the Northern District of California

84.  Dr Singer expressed disagreement with Dr Marinos' conclusion that plaintiff had a depressive disorder stating it was "not supported by the clinical evidence."  AR at 85.  Instead, Dr Singer attributed plaintiff's "depressive component" to an adjustment to a lifelong chronic illness, which did not meet or equal a listing for a psychiatric disorder.  Id.

The ALJ then compared evidence from the comparison point decision ("CPD") of July 14, 1993 that found plaintiff disabled, to the recent medical evidence and plaintiff's testimony at the first and second ALJ hearings.  Then to determine whether plaintiff's SSI should continue, the ALJ used a two-step test:  (1) whether there had been medical improvement related to plaintiff's ability to work; and (2) whether plaintiff currently had impairments that prevented him from working.  AR at 24.

The ALJ found that "the record clearly indicated medical improvement."  AR at 25.  While the ALJ recognized that plaintiff "has had a multitude of medical problems in the 10 years since the last CPD," he found that plaintiff's "allegations of continuing disability [were] not totally credible and only partially substantiated by the medical evidence."  AR at 25.  Specifically, the ALJ discredited plaintiff's September 2003 testimony that he could only walk one to two blocks and was unable to work due to knee problems.  AR at 26.  In so doing, the ALJ relied on four pieces of evidence: (1) Dr Rana's May 2001 findings that plaintiff had normal muscle strength and no muscle atrophy in his lower extremities; (2) the fact that plaintiff was able to perform many activities of daily living without assistance; (3) the inference that plaintiff could not have held his job as a security guard for

10

**United States District Court**

For the Northern District of California

over a year if he could only walk two blocks; and (4) the fact that plaintiff performed substantial gainful activity in 2001, as a security guard and warehouse worker.  Id.  The ALJ then concluded that plaintiff's medical improvement allowed him to perform substantial gainful activity.  Id.

In determining plaintiff's residual functional capacity ("RFC"), the ALJ rejected plaintiff's complaints as "not generally credible and not supported by substantial medical evidence."  AR at 27-28.  The ALJ then found that plaintiff could not perform his past relevant work but could perform "sedentary work with slight limitations due to his depression that would preclude performing complex and detailed tasks."  AR at 27.

The ALJ next heard from VE Nancy Rynd to determine whether plaintiff could perform any jobs that exist in significant numbers in the national economy.  AR at 29, 87.  The ALJ posed a hypothetical question to Ms Rynd that, given an individual with plaintiff's background, education, and work experience and "a residual functional capacity for sedentary work, and only slight limitations in the nature of depression, are there jobs which such an individual could do?"  AR at 89.  Ms Rynd responded affirmatively, stating that plaintiff "would be appropriate for customer service or telemarketing positions.  As well for some clerical positions that are sedentary."  AR at 89-90.  The ALJ then asked plaintiff if he had any questions for Ms Rynd, to which he answered "No, I don't."  AR 90-91.

//

//

//

11

United States District Court

For the Northern District of California

On October 15, 2003, the ALJ issued his decision stating that although plaintiff's exertional and nonexertional limitations did not allow him to perform the full range of sedentary work, he could perform a significant number of unskilled sedentary jobs in the national economy.  AR at 30.  Because the ALJ determined plaintiff could engage in substantial gainful activity, he found plaintiff's disability to have ceased in July 2001.  Id.

Plaintiff again appealed to the SSA Appeals Council.  AR at 13.  On May 12, 2004, the AC denied plaintiff's request for review and the ALJ's decision became final.  AR at 8.  On July 6, 2004, plaintiff filed this appeal.  Doc #1.  Shortly afterward, plaintiff secured counsel to represent him in this matter.  AR at 7.  Plaintiff claims that he is still disabled and unable to perform substantial gainful activity.

II

The court must uphold the SSA's decision to deny benefits if it is supported by substantial evidence and is not based on legal error.  Andrews v Shalala, 53 F3d 1035, 1039 (9th Cir 1995).  Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Id.  The ALJ is responsible for determining credibility, resolving conflicts in medical testimony and resolving ambiguities.  Id.

//

//

//

//

12

United States District Court

For the Northern District of California

III

A

Under the Act, a "disability" is the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for continuous period of not less than 12 months."  42 USC § 423(d)(1)(A).  An individual will be found disabled if his impairments are such that "he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy * * *."  Id.

Once a claimant is found disabled, the burden of establishing a continuing disability lies with the claimant, but an earlier finding of disability gives rise to the presumption that the condition still exists.  Brown v Heckler, 713 F2d 441, 442 (9th Cir 1983).  Although the claimant retains the burden of proof, this presumption shifts the burden of production to the commissioner to produce evidence to meet or rebut this presumption.  Id.

Disability benefits cannot be terminated unless substantial evidence demonstrates medical improvement in the claimant's impairment so that the claimant can engage in substantial gainful activity.  See 42 USC § 423(f); Murray v Heckler, 722 F2d 499, 500 (9th Cir 1983).  "Medical improvement" is any decrease in the medical severity of the claimant's impairment following a favorable determination by the SSA to grant disability benefits.  20 CFR § 416.994(b)(1)(i).

//

13

United States District Court

For the Northern District of California

To determine whether a recipient of SSI who is over eighteen remains disabled, the ALJ must follow a seven-step evaluation.  20 CFR § 416.994(b)(5).  In general, § 416.994(b) provides that in order to find whether a claimant's disability continues, the SSA must determine if there has been any medical improvement in the claimant's impairment and, if so, whether the medical improvement is related to the claimant's ability to work.

Specifically, the ALJ must apply a seven-step, sequential evaluation considering: (1) whether the claimant has an impairment or combination of impairments that meets or equals the severity of an impairment listed in Appendix 1 of Subpart P of part 404; (2) whether there has been medical improvement in the claimant's condition; (3) whether the medical improvement in the claimant's condition relates to his ability to work; (4) whether any of the listed exceptions in § 416.994(b)(3) or (b)(4) apply, if there has been no medical improvement in the claimant's ability to work; (5) whether all of the claimant's current impairments, in combination, are severe; (6) whether the claimant can perform his past relevant work after considering his residual functional capacity in light of his severe impairments; (7) whether the claimant can do other work, if he can no longer perform his past relevant work.  20 CFR § 416.994(b)(5)(i) to (vii).

Accordingly, the proper inquiry is whether, applying the seven-step evaluation, "the Secretary's finding of improvement to the point of no disability is supported by substantial evidence." Simpson v Schweiker, 691 F2d 966, 969 (11th Cir 1982).

//

//

14

**B**

Plaintiff's principal challenges to the ALJ's final decision are that the ALJ:  (1) failed adequately to develop the record (Pl Mot at 6-7); (2) failed to list all of plaintiff's impairments in the hypothetical presented to the vocational expert (Pl Rep Mot at 8-9); and (3) failed properly to evaluate and make specific findings regarding plaintiff's credibility concerning his testimony of pain (Pl Mot at 4-6; Pl Rep Mot at 4-6).

**1**

Plaintiff contends that the ALJ failed to develop the record regarding plaintiff's impairments and disabilities because the ALJ did not consider the side effects of plaintiff's numerous medications on his ability to work.  Pl Mot at 5.  The court agrees.  The ALJ's failure to address the effects of plaintiff's medications led to an incomplete record upon which the VE based her opinion that plaintiff could perform sedentary work.  And because the VE's opinion led the ALJ to terminate plaintiff's benefits, remand is appropriate.

The ALJ must fully and fairly develop the record to assure that plaintiff's interests are considered.  See <u>Tonapetyan v Halter</u>, 242 F3d 1144, 1150 (9th Cir 2001).  Among the facts relevant to a finding of disability are the "limitations or restrictions imposed by the mechanics of treatment" including the frequency of treatment and side effects of medications.  SSR 96-8p. In addition, the Ninth Circuit held that "the side effects of medications can have a significant impact on an individual's ability to work and should figure in the disability determination process." <u>Varney v Secretary of Health and Human Services</u>, 846 F2d

United States District Court

For the Northern District of California

15

United States District Court

For the Northern District of California

581, 585 (9th Cir 1988).  And although the ALJ "is not required to make specific findings concerning the side effects of prescription drugs on the claimant's ability to work," the ALJ must include enough information for the reviewing court to determine whether substantial evidence supports the decision.  <u>Herron v Shalala</u>, 19 F3d 329, 335 (7th Cir 1994).

Furthermore, if an ALJ discredits the claimant's testimony, he must make specific findings.  <u>Varney</u>, 846 F2d at 585. In <u>Varney</u>, the claimant testified that she took several medications that "caused side effects ranging from fatigue to nausea, swollen ankles, diarrhea and constipation."  Id at 582.  The ALJ did not inquire further into the claimant's side effects but instead discredited the claimant's testimony as being "subjective symptoms and limitations."  Id at 585.  Consequently, the ALJ found that the claimant was not disabled and could perform sedentary work.  Id at 582.  The court found that the ALJ made a reversible error because:

> [h]e did not * * * make any findings with regard to the side effects; he did not ask the medical expert who testified at the hearing about the side effects that could reasonably be expected from Varney's medications; he did not consider the impact of the side effects on Varney's ability to work, or include them as a limitation in his hypothetical question to the vocational expert.

Id at 585.

Although <u>Varney</u>'s facts differ from the present case, its principle governs here.  While an ALJ should not have to inquire into a claimant's side effects from medication under every circumstance, plaintiff's use of thirteen medications should have led the ALJ to inquire further.  Instead the record is silent. Despite evidence in the form of plaintiff's testimony and a letter from plaintiff's treating physician, the ALJ did not ask the two

United States District Court

For the Northern District of California

medical experts a single question about actual or potential side effects from this combination of medications.  And as in <u>Varney</u>, failure of the ALJ to inquire properly into the side effects of plaintiff's medications was error.

Moreover, the ALJ never asked the VE whether plaintiff's daily use of some thirteen medicines or the logistics of managing a complex medication regime would interfere with his ability to work.  AR at 89.  Nor did the plaintiff, who was unrepresented, develop the record on the same issues.  AR at 91.  As a result, the only limitation on plaintiff's work capacity in the ALJ's hypothetical question posed to the VE was for "slight limitations in the nature of depression."  AR at 89.

Accordingly, the hypothetical question posed to the VE failed to reflect each of plaintiff's limitations and thus, the VE's answer has limited evidentiary value.  See <u>Gallant v Heckler</u>, 753 F2d 1450, 1456 (9th Cir 1984) ("Because neither the hypothetical nor the answer properly set forth all of Gallant's impairments, the vocational expert's testimony cannot constitute substantial evidence to support the ALJ's findings.").  Hence, the ALJ could not properly base his decision to terminate plaintiff's disability status on the VE's opinion.

Without the VE's opinion and other necessary evidence in the record regarding plaintiff's medication regime, the record lacks the substantial evidence to uphold the ALJ's decision.  On remand, the ALJ should thoroughly develop the record by inquiring

\\

\\

\\

United States District Court
For the Northern District of California

into plaintiff's side effects from medication, frequency of medical treatment, disruption to routine and any other limitations appropriate under SSR 96-8p.  The ALJ should then revisit step seven in 20 CFR § 416.994(b)(5)(vii) to determine if any of these limitations affect plaintiff's ability to work.

2

Plaintiff also contends that the ALJ did not properly evaluate and make specific findings in discrediting plaintiff's testimony regarding pain.  The court finds that the ALJ's determination that plaintiff's "allegations of continuing disability are not totally credible," AR at 25, was not supported by proper findings under the law of this circuit.

"Once the claimant produces objective medical evidence of an underlying impairment, an adjudicator may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain."  Bunnell v Sullivan, 947 F2d 341, 345 (9th Cir 1991).  To find a claimant lacks credibility, the ALJ must make specific findings supported by the record and cannot "arbitrarily discredit a claimant's testimony regarding pain."  Id at 345-46 (internal quotation marks omitted).  The ALJ's reasons for rejecting a claimant's testimony must be "clear and convincing," Lester v Chater, 81 F3d 821, 834 (9th Cir 1995), and must provide "specific, cogent reasons for the disbelief."  Rashad v Sullivan,

\\
\\
\\
\\

18

United States District Court

For the Northern District of California

903 F2d 1229, 1231 (9th Cir 1990).  General findings are insufficient; the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.  <u>Lester</u>, 81 F3d at 834.

At the second ALJ hearing, plaintiff testified that he had not worked since 2001, because of "back pains, neck pains, finger cramping and swelling of the toe" and that he is in "bed all day long, because of the pain."  AR at 71.  He also testified that both knees hurt, which made it difficult to walk, especially up hills and stairs.  AR at 70.  The ALJ then found that plaintiff was "not totally credible regarding his inability to work."  AR at 29.  In particular, the ALJ discredited plaintiff's testimony regarding his back, knee and hand pain.

To offer corroborating objective medical evidence for his knee pain, plaintiff testified that, in 1991, he had arthroscopic surgery on his left knee because his bone was deteriorating, which then required an additional three surgeries to further repair his knee.  AR at 53-54, 56.  Although plaintiff's medical record contains no evidence of these surgeries, Dr Potter and Dr Rana both corroborate plaintiff's testimony.  In a letter to the SSA, Dr Potter stated that plaintiff has "a chronically damaged left knee."  AR at 330.  And in May 2001, during the SSA consultative medical exam, Dr Rana acknowledged that plaintiff's medical history included "left arthroscopic knee surgery" and diagnosed him with "[a]rthritis in knees."  AR at 289, 291.

The record also corroborates plaintiff's back pain.  On September 18, 2000, Dr Potter saw plaintiff for lower thoracic back pain accompanied by sharper pains lasting about 20 minutes and

United States District Court

For the Northern District of California

1   determined there were "[m]inimal anterior compression of the

2   T11-T12 vertebral bodies, consistent with mild compression

3   fractures of uncertain duration."  AR at 259, 262.  Dr Rana also

4   corroborated plaintiff's back pain with a diagnosis of chronic low

5   back pain, which was most likely "secondary to degenerative joint

6   disease."  AR at 291.

7        Moreover, the ALJ recognized that "evidence confirms knee

8   and back pain," AR at 26, and this court agrees with that

9   determination.  Accordingly, a review of the record indicates that

10  there is objective medical evidence to substantiate plaintiff's

11  subjective complaints of knee and back pain.

12       The court must now determine whether the ALJ's reasons

13  for discrediting plaintiff's testimony are "specific, cogent

14  reasons for the disbelief."  Rashad, 903 F2d at 1231.  The ALJ

15  discredited plaintiff's pain testimony with the following pieces of

16  evidence: (1) that plaintiff performs many activities of daily

17  living without assistance, takes public transportation, uses a

18  cane, and sat for ninety minutes in the hearing without difficulty;

19  (2) Dr Rana's May 2001 findings that plaintiff had "normal muscle

20  strength and no muscle atrophy in his lower extremities"; (3) the

21  inference that plaintiff could not have held his job as a security

22  guard for over a year if he could only walk two blocks; and (4) the

23  fact that plaintiff performed substantial gainful activity in 2001

24  as a security guard and warehouse worker.  AR at 26.

25       This court does not find the ALJ's reasoning "clear and

26  convincing."  Plaintiff demonstrated with objective medical

27  evidence that his back and knee ailments could reasonably produce

28  pain.  In response, the ALJ primarily relied on evidence from

United States District Court

For the Northern District of California

before May 2001 to discredit plaintiff's September 2003 pain allegations.  There is no logic to this reasoning.  It was improper for the ALJ to discredit plaintiff's allegations of pain by using outdated evidence; the correct analysis requires consideration of all relevant evidence, especially that evidence established within the previous twelve months.  See 20 CFR § 416.912(d) (implying that the SSA will focus upon evidence from the preceding twelve months) OR ("Complete medical history" focuses on the previous twelve months of a claimant's medical history, unless the SSA deems it necessary to develop the record further.  Implicit in this definition is that the SSA gives more weight to recent evidence over older evidence).  Accordingly, this court finds that the ALJ did not give due consideration to evidence from the relevant time period to discredit plaintiff's September 2003 pain allegations.

Additionally, the ALJ stated that he considered the plaintiff's subjective allegations of pain and "finds them not generally credible and not supported by substantial medical evidence."  AR at 28.  In Bunnell, the Ninth Circuit required a claimant to produce "objective medical evidence of an underlying impairment" to support his subjective allegations of pain.  Bunnell, 947 F 2d at 345.  Here, the ALJ erred as a matter of law by requiring substantial medical evidence, as opposed to the correct and less stringent legal standard of objective medical evidence, to support plaintiff's allegations of pain.

\\

\\

\\

\\

21

3

Given the court's determination that the ALJ erred as a matter of law in applying the seven-part test articulated under 20 CFR § 416.994(b)(5).  It is unnecessary to reach the merits of plaintiff's other arguments.

Although the ALJ applied the general analysis of 20 CFR § 416.994(b), the ALJ did not "follow specific steps in reviewing the question of whether [plaintiff's] disability continues."  20 CFR § 416.994(b)(5).  In its remand order, the Appeals Council directed the ALJ to determine whether plaintiff could "engage in substantial gainful activity under the evaluation steps cited in 20 CFR 416.994(b)(5)(v) through 416.994(b)(5)(vii)."  AR at 173.  Despite this guidance, the ALJ did not follow these steps and cited "20 CFR § 416.1594(a)" (AR at 24), a regulation that does not exist, as authority for evaluating whether plaintiff's disability continues.

Accordingly, on remand, the ALJ should determine whether plaintiff's disability continues or ends using the specific, seven-step test articulated under 20 CFR §§ 416.994(b)(5)(i)-(vii).

C

Lastly, the court must consider whether to remand for additional proceedings or for the payment of benefits.  In general, remand for additional administrative proceedings "is appropriate if enhancement of the record would be useful."  Harman v Apfel, 211 F3d 1172, 1178 (9th Cir 2000).  Moreover, when a court reverses an administrative determination, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation."  INS v Ventura, 537 US 12, 16 (2002)

United States District Court

For the Northern District of California

(per curiam); (quoting <u>Florida Power & Light Co v Lorion</u>, 470 US 729, 744 (1985)); see also <u>Moisa v Barnhart</u>, 367 F3d 882, 886-87 (9th Cir 2004) (stating, in a Social Security disability case, that remand is appropriate in most circumstances).

"Conversely, where the record has been developed fully and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits." <u>Benecke v Barnhart</u>, 379 F3d 587, 593 (9th Cir 2004). More specifically, the court should credit evidence and direct an immediate award of benefits if:

(1) the ALJ has failed to provide legally sufficient reasons for rejecting the evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Id at 593 (quoting <u>Harman</u>, 211 F3d at 1178).

Here, substantial evidence in the record establishes that plaintiff's medication regime was complex and that he had experienced serious side effects requiring medical care from at least one of the medications. The record is otherwise silent, however, as to how the thirteen daily medications, or the combination of them, affect plaintiff's ability to work. Hence, it is necessary to remand for further development of the record and resolution of this issue before the ALJ can determine whether to terminate plaintiff's disability status.

\\

\\

\\

\\

23

United States District Court
For the Northern District of California

1

IV

2          For the foregoing reasons, the court GRANTS plaintiff's

3   motion for summary judgment (Doc #18) and DENIES defendant's motion

4   for summary judgment (Doc #19).  The court VACATES the ALJ's

5   decision to deny benefits and REMANDS for further proceedings in

6   accordance with this order.  The clerk is directed to close the

7   file and terminate all pending motions.

8

9          IT IS SO ORDERED.

10

11   _____

12   VAUGHN R WALKER
     United States District Chief Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28